**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| CARMEN ELECTRA a/k/a TARA LEIGH PATRICK, CIELO JEAN "CJ" GIBSON, EVA PEPAJ, IRINA VORONINA, JESSICA HINTON a/k/a JESSA HINTON, KEELEY REBECCA HAZELL, LINA POSADA, MARKETA LIM a/k/a MARKETA KAZDOVA, PAOLA CAÑAS, TIFFANY RILEY a/k/a TIFFANY SELBY, URSULA MAYES and TIFFANY GRAY a/k/a TIFFANY TOTH, <br><br> Plaintiffs, <br><br> v. <br><br> EAST COAST RESTAURANT & NIGHTCLUBS, LLC d/b/a MILLENNIUM CABARET, <br><br> Defendant. | Civil Action No. |

**COMPLAINT**

Plaintiffs CARMEN ELECTRA a/k/a TARA LEIGH PATRICK, CIELO JEAN "CJ" GIBSON, EVA PEPAJ, IRINA VORONINA, JESSICA HINTON a/k/a JESSA HINTON, KEELEY REBECCA HAZELL, LINA POSADA, MARKETA LIM a/k/a MARKETA KAZDOVA, PAOLA CAÑAS, TIFFANY RILEY a/k/a TIFFANY SELBY, URSULA MAYES and TIFFANY GRAY a/k/a TIFFANY TOTH, (collectively, "Plaintiffs"), file this Complaint against EAST COAST RESTAURANT & NIGHTCLUBS, LLC d/b/a MILLENNIUM CABARET ("Defendant") respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of

1

Plaintiffs, each of whom are well-known professional models, to promote their strip club, MILLENNIUM CABARET  located at 390 S. River Road, Bedford, New Hampshire 03110 (hereinafter referred to as the "Strip Club" or "Millennium").

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of New Hampshire Common Law, Invasion of Privacy - Misappropriation of Name and Likeness; d) Common Law Right of Privacy - False Light; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     According to publicly available records, Defendant EAST COAST RESTAURANT & NIGHTCLUBS, LLC, is a limited liability company formed under the laws of the state of New Hampshire, with its principal place of business located at 390 S. River Road,

Bedford, New Hampshire, 03110. Upon information and belief, EAST COAST RESTAURANT & NIGHTCLUBS, LLC operates MILLENNIUM CABARET, which is located at 390 S. River Road, Bedford, New Hampshire 03110.

8. Venue is proper in the United States District Court for the District of New Hampshire because Defendant's principal place of business is located in Bedford, New Hampshire, Hillsborough County.

9. A significant portion of the alleged causes of action arose and accrued in Bedford, New Hampshire and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominantly located in Bedford, New Hampshire.

**PARTIES**

*Plaintiffs*

10. Plaintiff CARMEN ELECTRA a/k/a TARA LEIGH PATRICK ("ELECTRA") is a well-known professional model, and a resident of Los Angeles County, California.

11. Plaintiff CIELO JEAN "CJ" GIBSON ("GIBSON") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff EVA PEPAJ ("PEPAJ") is a well-known professional model, and a resident of Los Angeles County, California.

13. Plaintiff IRINA VORONINA ("VORONINA") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff JESSICA HINTON a/k/a JESSA HINTON ("HINTON") is a well-known professional model, and a resident of Los Angeles County, California.

15. Plaintiff KEELEY REBECCA HAZELL ("HAZELL") is a well-known professional model, and a resident of Los Angeles County, California.

3

16.     Plaintiff LINA POSADA ("POSADA") is a well-known professional model, and a resident of San Bernardino County, California.

17.     Plaintiff MARKETA LIM a/k/a MARKETA KAZDOVA ("KAZDOVA") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff PAOLA CAÑAS ("CAÑAS") is a well-known professional model, and a resident of Miami-Dade County, Florida.

19.     Plaintiff TIFFANY RILEY a/k/a TIFFANY SELBY ("SELBY") is a well-known professional model, and a resident of Duval County, Florida.

20.     Plaintiff URSULA MAYES ("MAYES") is a well-known professional model, and a resident of Orange County, California.

21.     Plaintiff TIFFANY GRAY a/k/a TIFFANY TOTH ("GRAY") is a well-known professional model, and a resident of Orange County, California.

### Defendant

22.     Defendant, EAST COAST RESTAURANT & NIGHTCLUBS, LLC d/b/a MILLENNIUM CABARET, is a limited liability company formed under the laws of the state of New Hampshire and registered to conduct business in New Hampshire. During times relevant to this action, EAST COAST RESTAURANT & NIGHTCLUBS, LLC operated MILLENNIUM CABARET.

23.     Service of process may be perfected upon Defendant EAST COAST RESTAURANT & NIGHTCLUBS, LLC d/b/a MILLENNIUM CABARET by serving the registered agent for service of process, David W. Allen, who can be located at 1000 Elm Street, 17th Floor, Manchester, NH 03101.

## FACTUAL ALLEGATIONS

24.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

26.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

27.     In the case of each Plaintiff, this apparent claim was false.

28.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

29.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

30.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

*Plaintiffs' Individual Backgrounds and Careers*

31.     ELECTRA is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on Baywatch and MTV's Singled Out. She has since made the move to the big screen with starring roles in blockbuster hits including Scary Movie, Dirty Love, Cheaper by the Dozen 2, and Meet the Spartans. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, Carmen Electra's Aerobic Striptease. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, Oy Vey, My Son is Gay and 2-Headed Shark Attack, alongside Charlie O'Connell, served as a guest judge on Britain's Got Talent, and made reoccurring guest appearances on CW's hit show, 90210. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including The Wendy Williams Show, Cyndi Lauper's Home For The Holidays charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the

6

release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra was the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8, 2016. She has over 5 million Facebook followers, 1 million Instagram followers, and 383,000 Twitter followers.[1]

32.    That we know of, ELECTRA is depicted in the photos in Exhibit "A" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that ELECTRA was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

33.    ELECTRA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.    GIBSON is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

35. That we know of, GIBSON is depicted in the photos in Exhibit "B" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that GIBSON was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

36. GIBSON has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. PEPAJ is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

38. That we know of, PEPAJ is depicted in the photos in Exhibit "C" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that PEPAJ was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

39. PEPAJ has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

8

will continue to suffer, damages as a result of same.

40.    VORONINA is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

41.    That we know of, VORONINA is depicted in the photo in Exhibit "D" to promote Millennium on its Facebook page. This Image was intentionally altered to make it appear that VORONINA was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

9

42.     VORONINA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.     HINTON was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

44.     That we know of, HINTON is depicted in the photos in Exhibit "E" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that

10

HINTON was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

45.     HINTON has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     HAZELL is an English model, musician, singer and actress. Hazell became one of Britain's most successful glamour models, working with brands such as Page 3, FHM, Loaded, Nuts and Zoo Weekly. She has also made numerous television appearances and has appeared in films such as Horrible Bosses 2. At 17, she competed in The Daily Star's "Search for a Beach Babe" contest and won she then went on to study fashion at Lewisham College. She entered The Sun's Page 3 Idol competition and was chosen as winner of £10,000 worth of "sexy clothes", "a one-year membership of the Rex cinema and bar", and a one-year exclusive glamour modelling contract with The Sun in December of 2004.Hazell has been regularly featured in Nuts and Zoo. She has been on the cover of The Sun's 2006 and 2007 Page 3 calendars, in addition to her own wall calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005, Hazell appeared on the front cover of Maxim magazine, and on the front cover of FHM in September. In January 2006, she appeared on the front cover of Loaded magazine. In 2007, Hazell and IT expert Gary Schwartz co-presented Byte Me TV, an online program that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC Three documentary Page Three Teens. Hazell released a pop music single called "Voyeur" and she along with agent Ginny Mettrick co-founded modelling agency Muse Management. In 2009, according to the August edition of Loaded, Peta Todd stated that Hazell had given modelling up to pursue a career

in acting and that she was in America receiving acting lessons. Her last appearance on Page 3 of The Sun was on 30 September 2009. In 2010, Hazell had her first lead role in the short film Venus and the Sun, a comedic retelling of Ovid's myth, Venus and Adonis. Hazell had a small role in the film Like Crazy, which won both the Grand and a Special Jury Prize at the 2011 Sundance Film Festival. In 2012, Hazell played a supporting role in the British gangster movie St George's Day, which was directed by Frank Harper. In January 2013, Hazell made another return to modelling by appearing in FHM. Hazell was the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. She is currently the face of MotorStorm: Pacific Rift for PlayStation 3. Hazell had a small role in the full-length version of Cashback, playing "Frozen Girl in Sainsbury's".  In 2015, Hazell landed a role in E!'s first scripted drama, The Royals, as "Violet". Hazell starred in the 2013 comedy film Awful Nice and the 2015 horror film Whispers. She also appeared in the 2016 short film Queen of Hearts. She appeared in the 2018 TV Movie Vows of Deceit. Hazell was hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in The Sun, giving environmental tips such as turning lights off during the day. She was named alongside the likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list. Hazell backed a major breast cancer awareness campaign for Breakthrough Breast Cancer. The campaign, called TALK TLC, aimed to promote Breakthrough's breast health message about the need to be aware of the signs and symptoms of breast cancer. Hazell has also signed up to take part in the Breakthrough Generations Study consisting of 100,000 women and spanning 40 years; the study aims to be the largest and most comprehensive of its kind.

47.     That we know of, HAZELL is depicted in the photos in Exhibit "F" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that

HAZELL was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

48.     HAZELL has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.     POSADA is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,100 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.

50.     That we know of, POSADA is depicted in the photo in Exhibit "G" to promote Millennium on its Facebook page. This Image was intentionally altered to make it appear that POSADA was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

51.     POSADA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.     KAZDOVA was first discovered in a family vacation and was offered her first contract at the age of fourteen. When she turned fifteen, her agents from Czech Republic started sending her all over Asia and Europe to work as a model. She has worked in places such as Hong Kong, Tokyo, Beijing, Shanghai, Guangzhou. As well as throughout Europe, such as Milan,

London, Paris, Portugal, Germany, Austria, and Dubai. She has appeared in Elle, Style, Cosmo Girl, Dolce Vita, Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam and other magazines. Since 2011, she has been working in New York/ L.A. and has worked with Nordstrom, Macy's, Tadashi Shoji, Anthony Franco, Alicia Estrada, Mirabella Beauty, MAC, Level 99, Dreamgirl Lingerie, Erka Mare Swimwear, HausofPinkLemonaid Swimwear, HauteLook, Patagonia, and many others.

53.     That we know of, KAZDOVA is depicted in the photos in Exhibit "H" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that KAZDOVA was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

54.     KAZDOVA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     CAÑAS is a Colombian-born model now residing and working in the United States. With over twelve years in the industry, she has found great success as a model, host, runway model, and actress. Cañas has worked runway shows in her native Colombia, as well as in Mexico, Ecuador, the United States, and most recently Paris, France. She is best known for appearing on the cover of Playboy Mexico in May 2018. She has also led international campaigns and was a contracted model for Curve's worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked with international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Cañas has

14

appeared on numerous TV shows like FOX Sports and on networks such as Telemundo and TV Azteca. She continues to build an impressive profile and is in high demand in Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers.

56.     That we know of, CAÑAS is depicted in the photos in Exhibit "I" to promote Millennium on its Facebook page. These Images were intentionally altered to make it appear that CAÑAS was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

57.     CAÑAS has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     SELBY has appeared in TV in shows such as The Girl's Next Door, Bikini Destinations, Poor Man's Bikini Beach (host), Last Comic Standing (model), Deal or No Deal (case model). She has done commercials for Guitar Hero 5 (with Hugh Hefner), Ab Lounge Informercial, and Reflections Boutique. Her modeling consists of Miss Cobra Seats (2010), Dreamgirl Lingerie Catalog (2009), Matco Tools Calendar (2009), Nom De Plum Lingerie Catalog (2008), Watercraft World Magazine (2008), SBT Spokesmodel (2007/08), Playboy Playmate (July 2007), Blue Tattoo Jeans (2008), Players Only. com, Hankook Tires, MHT Wheels, Spike TV. com, Elegant Moments Lingerie Catalog (2008), Quad Magazine (2007), Kat Man Du Poster, Georgia Peach Buns 2005 Calendar/Website, Star Magazine, Miss Hawaiian Tropic (St. Augustine, FL 2002), Miss Hawaiian Tropic (Jacksonville, FL 2004), Axis Magazine, Reflections Boutique, Xposed Magazine, DC Swimwear, Forplay Lingerie 2005 Catalog, Show Me/s Restaurant Billboard, PhatMuscle, RamTech 2005 Calendar, California Surfer Girls 2006

Calendar, Bang Vodka, Joe Rocket, Flirt Catalog, Benchwarmer Trading Cards, Makes & Models Magazine (2006), 2 Wheel Tuner Magazine, Boating Magazine – cover, MPH Magazine (Feb. 2006) Paradise Denim Catalog (2006). G Collections Lingerie Catalog (2006), and Echo Surf Posters. She's been a spokesmodel for Bang Vodka, V-Sept PowerSports, Thompson Pump, Miss Suzuki 2007, and Budweiser 2007. Her promotional work consists of Skoal Promotion, Stacker 2 Promotion, Hawaiian Tropic Promotion, and Guitar Center Grand Opening.

59.     That we know of, SELBY is depicted in the photo in Exhibit "J" to promote Millennium on its Facebook page. This Image was intentionally altered to make it appear that SELBY was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

60.     SELBY has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.     MAYES is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency. She is also the owner of Freeface Skincare and is a licensed esthetician and professional

makeup artist.

62.     That we know of, MAYES is depicted in the photo in Exhibit "K" to promote Millennium on its Facebook page. This Image was intentionally altered to make it appear that MAYES was either an employee working at Millennium, that she endorsed Millennium, or that she was otherwise associated or affiliated with Millennium.

63.     MAYES has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     GRAY is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

65.     That we know of, GRAY is depicted in the photo in Exhibit "L" to promote Millennium on its Facebook page. This Image was intentionally altered to make it appear that GRAY was either an employee working at Millennium, that she endorsed Millennium, or that she

17

was otherwise associated or affiliated with Millennium.

66.    GRAY has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

### *Defendant's Business Activity and Misappropriation*

67.    Defendant operates (or operated, during the relevant time period) a Strip Club, where it is (or was) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business's clientele.

68.    Defendant owns, operates, and controls Millennium's social media accounts, including its Facebook, Twitter, and Instagram accounts.

69.    Defendants used Millennium's Facebook, Twitter, and Instagram accounts to promote Millennium's and to attract patrons.

70.    Defendant did this for its own commercial and financial benefit.

71.    Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Millennium, endorsed Millennium, or was otherwise associated or affiliated with Millennium.

72.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Millennium to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

73.    Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Millennium, and at no point have any of the Plaintiffs ever endorsed Millennium or otherwise been affiliated or associated with Millennium.

74.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

75.    Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

76.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

77.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

78.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

79.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

*Defendant's Misappropriation of Plaintiffs' Images*

80.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Millennium.

81.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

82.    In addition, Plaintiffs allege that any improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of a false impression of association with Millennium.

83.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

84.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

85.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Millennium's website, Twitter, Facebook, or Instagram accounts.

86.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

87.    Further, Plaintiffs are informed and believe, and thereon allege, that the unauthorized use, display, publication, and commercial exploitation of Plaintiffs' images by Defendants were not openly disclosed to Plaintiffs and were not reasonably discoverable through ordinary diligence at the time the subject images were initially posted or published.

88.    Plaintiffs did not have actual knowledge of Defendants' unauthorized use of their likenesses until on or about April 2026, when the infringements were first discovered through

20

investigation and review of Defendants' promotional materials. Prior to that date, Plaintiffs neither knew nor reasonably should have known of the existence, nature, or extent of Defendants' wrongful conduct.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

89.     Plaintiffs re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

90.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

91.     Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

92.     Thus, this was done in furtherance of Defendant's commercial benefit.

93.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identity to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

94.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar

21

marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

95.    As such, an unauthorized use of Plaintiffs' image to promote a establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

96.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

97.    Despite the fact that Defendant were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

98.    Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

99.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

100.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of

the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

101.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

102.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

103.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

104.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

105.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

106.    Defendant used Plaintiffs' image, likeness and/or identity as described herein

23

without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

107. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

108. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

109. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

110.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

111.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

112.    Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

113.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

114.    Defendant's wrongful conduct as described herein was willful.

115.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

116.    Defendants had actual or constructive knowledge of the wrongfulness of their

25

conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

117.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

118.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

119.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Violation of New Hampshire Common Law, Invasion of Privacy – Misappropriation of Name and Likeness)**

120.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

121.    New Hampshire recognizes the tort of invasion of privacy by appropriation of an individual's name or likeness and has adopted the Restatement (Second) of Torts § 652C, which provides that one who appropriates to his own use or benefit the name or likeness of another is subject to liability.

122.    The interest protected by this cause of action is Plaintiffs' exclusive right to control and derive value from their identities, including the commercial value, reputation, prestige, social standing, and public interest associated with their names and likenesses.

123.    Each Plaintiff is a professional model whose identity, likeness, and persona carry significant commercial value, which Plaintiffs routinely license for compensation in connection

26

with advertising, endorsements, and promotional campaigns.

124. Defendant, without Plaintiffs' knowledge, consent, or authorization, used Plaintiffs' images, likenesses, and identities in connection with Defendant's advertising, marketing, and promotion of its nightclub and related services.

125. Defendant's use of Plaintiffs' identities was undertaken for Defendant's own use and benefit, including to promote its business, attract patrons, increase revenue, and capitalize on the reputation, prestige, and commercial value associated with Plaintiffs' identities.

126. Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

127. Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

128. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

129. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

130. Plaintiffs are further informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered to reach a new audience and/or promote a different product.

27

131. Upon information and belief, Defendant selected Plaintiffs' images specifically because of the value associated with Plaintiffs' identities, and used those images to exploit that value for commercial gain.

132. Defendant's conduct constitutes misappropriation because Defendant appropriated for its own commercial advantage the reputation, prestige, and commercial value inherent in Plaintiffs' names and likenesses, rather than merely making incidental or informational use of those images.

133. Defendant's use of Plaintiffs' identities was not for news, commentary, or any non-commercial purpose, but instead was for the purpose of advertising and promoting Defendant's business and services.

134. At no time did any Plaintiff consent to Defendant's use of her name, image, likeness, or identity, and Defendant never compensated Plaintiffs for such use.

135. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages, including but not limited to: (a) loss of the exclusive right to control the commercial use of their identities; (b) loss of licensing income and commercial opportunities; (c) damage to their professional reputations and brand value; (d) emotional distress and mental anguish; and (e) Defendant's unjust enrichment derived from its unauthorized use.

136. Defendant's conduct was willful, knowing, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive or enhanced damages to the extent permitted under New Hampshire law.

137. WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages, disgorgement of profits, punitive damages, injunctive relief, costs, interest, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Privacy – False Light)

138. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

139. As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their image, photo, persona and likeness.

140. Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

141. As set forth herein, Defendant used each Plaintiffs' image and likeness for commercial purposes by using the same in Fetish advertising.

142. Defendant did so without any Plaintiffs' consent, written or otherwise.

143. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different media, after the initial date of the posting of their image and likeness and through the filing of this complaint.

144. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

145. Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant.

146. At no point did Defendant ever compensate Plaintiffs for its use of their Images.

147. No privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Defamation)

148. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

149. As detailed throughout this Complaint, Defendant had published altered images and likenesses of Plaintiffs in order to promote Defendant to the general public and potential clientele.

150. Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by the Defendant, that they endorsed the Defendant, or that they had some affiliation with the Defendant.

151. None of these representations was true.

152. In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs' employees, endorsed, and/or were somehow affiliated with Defendant.

153. Defendant was at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by the Defendant, had no affiliation with the Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

154. In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Defendant, had no affiliation with the Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

155. Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

30

156.   Defendant's publication of Plaintiffs' Images constitutes defamation under New Hampshire law because said publication falsely accuses Plaintiffs of having acted in a manner—i.e., working for or endorsing Defendant's establishment(s)—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

157.   Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under New Hampshire law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

158.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were somehow working for, affiliated with, or endorsing Defendant's business - an inference which Defendant's publication of the Images supports.

159.   Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under New Hampshire law because, insofar as said publication falsely portrays each of the Plaintiffs working for, affiliated with, or endorsing Defendant's business, it imputes unchastity to her.

160.   Defendant's publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and they are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

161.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

31

162.   Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes, which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

163.   Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

164.   Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

165.   Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

166.   Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes was not unauthorized, non-consensual, or false and deceptive.

167.   Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and New Hampshire law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

168.  Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

169.  As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

170.  Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

171.  Plaintiffs are, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

172.  By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain Images for its own use and financial gain.

173.  As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

174.  Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

175.  As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Defendant to the general public and potential clientele.

176.  Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were working for, affiliated with, or endorsing Defendant's business.

177.  Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially

due to its purported association with, employment of, and/or endorsement by Plaintiffs.

178. Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

179. Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant.

180. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

181. As such, Plaintiffs have been damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Quantum Meruit)**

182. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

183. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

184. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

185. Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Defendant, endorse Defendant, or are otherwise affiliated with Defendant, Defendant has not compensated Plaintiffs.

186. Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against

Defendant as follows:

A.  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;
B.  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Millennium's Strip Club;
C.  For punitive damages in an amount to be determined at trial;
D.  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;
E.  For such other and further relief as the Court may deem just and proper.


Respectfully submitted,

CARMEN ELECTRA a/k/a TARA LEIGH PATRICK, CIELO JEAN "CJ" GIBSON, EVA PEPAJ, IRINA VORONINA, JESSICA HINTON a/k/a JESSA HINTON, KEELEY REBECCA HAZELL, LINA POSADA, MARKETA LIM a/k/a MARKETA KAZDOVA, PAOLA CAÑAS, TIFFANY RILEY a/k/a TIFFANY SELBY, URSULA MAYES and TIFFANY GRAY a/k/a TIFFANY TOTH,

By their Attorneys,

SHAHEEN & GORDON, P.A.

Date: May 15, 2026      /s/ *Kirsten J. Allen*
Kirsten J. Allen
NH Bar #273661
P.O. Box 977
Dover, NH 03821
(603) 749-5000
kallen@shaheengordon.com


AND

THE CASAS LAW FIRM, P.C.
*Talent Rights Law*

Date: May 15, 2026      By:   /s/ Joseph N. Casas
Joseph N. Casas
Illinois Bar No. 6274674
California Bar No. 225800
8383 Wilshire Blvd., Ste 800,
Beverly Hills, CA 90211
joseph@talentrights.law

*Pro Hac Vice Admission Forthcoming*